The Fire Department, &c. v. Buhler.

*[handwritten annotation]*

## THE FIRE DEPARTMENT OF THE CITY OF NEW YORK v. DANIEL BUHLER.

A dwelling house is one designed to be occupied as a place of abode by night as well as day, and which is constructed with special reference to that object, and as long as it is capable of being so used in whole or in part, it retains its specific character.

A building erected for a store or a warehouse does not become a dwelling house, though a place may be fitted up in it for a person to sleep in, nor does one originally erected for a dwelling house cease to be such, though a part of it has been converted into a store.

A building, therefore, which was originally constructed as a dwelling house and was occupied as such, though subsequently used in part as "a store," the attic being used by the clerks as a sleeping apartment, and in the basement of which there was a bed-room,—*Held*, to be "a dwelling house" within the meaning of Sections 14 and 20 of the Fire laws of the City of New York (Laws of 1849, ch. 84, p. 121); the roof of which might be raised and made flat without subjecting the owner to the penalty prescribed in the statute.

APPEAL by the defendant from a judgment at Trial Term, entered on the verdict of a jury.

The Fire Department, &c. v. Buhler.

The plaintiffs brought this action to recover of the defendant penalties for an alleged violation of the Fire Laws of the city of New York. The complaint alleged that the defendant was the owner of the building 464 Pearl street, in New York city; that said building was constructed of timber, and that it was not a dwelling house, nor used or occupied as a dwelling house. That since July 1, 1849, the defendant had raised, enlarged and built upon said building, but had not completed it, in violation of § 20 of the statute, entitled, " An Act for the more effectual prevention of fires in the city of New York, and to amend the Acts heretofore passed for that purpose," passed March 7, 1849. That due notice had been given in writing, signed by one of the firewardens, and that the defendant had neglected to remove the said causes of violations of the statute.

The alteration complained of was made in April, 1853, by the defendant. The building was frame, with a brick front, and the alteration was, raising the roof, and making it flat.

Originally the building had been a dwelling house. For six years or more, previous to February, 1853; when the defendant hired, the whole first and second stories of the building were occupied by David Rockwell & Co., for a cloth store, except that they let a room on Pearl street as a carpet upholstery. The attic floor contained three bed-rooms; the clerks slept there, and ate at the boarding-houses; they were single men. Wilson G. Hunt occupied the building previous to Rockwell, as a cloth store. Thomas G. Hunt & Co. occupied it as a cloth store for nine years before Wilson G. Hunt & Co.

Rockwell succeeded them, and Buhler, the defendant, occupied the building as a furniture store from February, 1853, to May. It was occupied for the same business after May.

When the alterations were made, in April, 1853, the clerks' bed-rooms in the attic were removed; the partitions were taken out. A part of the lower floor was, at one time, let for an eating-house; and there was a bed there, in which a servant slept.

At the trial, the Judge, (BRADY, J.) charged the jury, that under the evidence, the building was a store and not a dwelling; that the plaintiffs, as matter of law, were entitled to a verdict, and ordered the jury to find a verdict for the plaintiffs for the sum of five hundred dollars, the penalty firstly claimed

in the complaint, to which the counsel for the defendant duly excepted.

The jury found a verdict for the plaintiff, and the defendant appealed to the General Term.

*A. R. Dyett, H. P. Allen,* and *A. H. Wagner,* for appellant.

*Augustus F. Smith* for respondents.

By the Court.—Daly, F. J.—The twentieth section of the Act of 1849 (Laws of 1849, p. 121), declares that no wooden or frame building, whether the same may have a brick front or otherwise, within the fire limits, shall be raised, enlarged, or built upon, provided, however, that brick front frame dwelling houses, and wooden dwelling houses only, may be raised under the circumstances and in the manner specially provided for in the fourteenth section of the Act. The fourteenth section enacts that if any brick front frame, or wooden dwelling house already erected within the fire limits, shall require new roofing, it may be lawful for the proprietor to raise the same for the purpose of making a flat roof thereon, provided such new roofing be made of copper, slate, tin, zinc or iron ; and provided such dwelling house, when so raised, shall not exceed thirty-five feet in height from the level of the side walk to the peak, or highest part thereof.

The building in question, which was of wood, with a brick front on Pearl street, and a brick front on Chatham street, as far up as the first story, had been erected as a dwelling house before the passage of the Act. The defendant was the lessee of the second and upper stories, and at the time when he made the alteration, which is claimed to have been a violation of the act, the roof was rotten down to the gutter, and the building required a new roof. The first and second stories had been occupied for fifteen years previously for a cloth store ; and the attic contained three bed-rooms, lathed and plastered, with chimney-piece and closet, in which the clerks of the former occupants slept. The defendant leased the upper part of the premises on the 17th of February, 1853, and before the May following he made the alteration in question. He carried up the front brick wall on Pearl street to the height of the peak of the old roof, and the wall on Chatham street to corres-

pond, which he built of wood, and then put on a flat roof of zinc, the highest part of which did not exceed thirty-five feet from the level of the sidewalk, by this means changing the attic into a third story.   In making the alteration, the original ceilings were taken down, and the bed-rooms and partitions were removed.   The defendant occupied part of the ground floor and the upper stories as a furniture store; the remaining part of the ground floor being occupied as a liquor store, and the basement as a restaurant.   A portion of the building was occupied by a daguerreotypist, who slept in the part used by him, and the servants of the keeper of the restaurant slept there.

The building, when the act was passed, and when the alteration was made, must, I think, be regarded as a dwelling house.   According to the testimony, it was originally constructed and arranged to be used as a dwelling house, and the fact that a part of it, or the principal part of it, was used as a store, did not make it less a house of that description.   A dwelling house is one designed to be occupied as a place of abode by night as well as by day, and which is constructed with especial reference to that object, and as long as it is capable of being so used, in whole or in part, it retains its specific character.   A building erected for a store or warehouse does not become a dwelling house, though a place may be fitted up in it for persons to sleep in; nor does one originally erected as a dwelling house, cease to be such, though a part of it has been converted into a store.

The building, before the improvement was made, was, in my judgment, a dwelling house, and if it were, the only question that can arise, is, whether the defendant did anything more than is permitted by the Act in the case of houses of that description.   I think he did not.   The act authorizes the raising of the roof for the purpose of making a flat one, where the building requires new roofing, and by thus allowing the roof to be raised and made flat, the act contemplates exactly what was done in this case, the addition of another story by the raising and flattening of the roof.   The building required a new roof; it was raised no higher than the limit prescribed by the Act, and the roof was made of a material allowed by the Act. What the effect of the alteration may be in the future use of

the building is immaterial. It is sufficient that the statute allows the alteration to be made, if made in the mode prescribed. It imposes no limitation or restriction except what is stated, and if the proprietor, in raising and flattening the roof, thinks fit to convert the former attic from a collection of sleeping apartments into a single room to be used thereafter as a ware-room, there is nothing in the act restraining him from so doing. The argument of the Counsel of the Fire Department is that the effect of the alteration was to convert the whole building into a store, the ground floor and second story having been previously used for such a purpose. This was scarcely so, as the servants of the restaurant slept in the basement, in a room built in the basement for that purpose. But if such were the effect, it would make no difference. The only question that can arise, is whether it was a dwelling house already erected when the Act was passed, and if it was, whether the alteration was such as the Act permitted. This statute imposes very heavy penalties for the violation of its provisions (*Amended Act, Laws of* 1857, *p.* 73, § 3), and it should not be extended beyond what is plainly expressed or manifestly intended. It should, in every case where it is alleged to be a violation of the statute, clearly appear that the alteration or enlargement made was distinctly prohibited; and this is not, in my judgment, such a case.

HILTON, J., concurred.

BRADY, J., dissented.

Judgment reversed; new trial ordered; costs to abide event.